IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

| | |
|---|---|
| JASON HADDOX, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:20-00301 |
| | ) (Criminal No. 2:18-00129) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and Amended Section 2255 Motion.[1] (Document Nos. 130 and 156.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 131.)

## FACTUAL AND PROCEDURAL BACKGROUND

**1.      Criminal Action No. 2:18-00129:**

On September 26, 2018, Movant and a co-defendant were charged in a two-count Superseding Indictment. (Criminal Action No. 2:18-00129, Document No. 32.) Specifically, Movant was charged with one count of Aiding and Abetting the Distribution of Five Grams of Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count One); and one count of Aiding and Abetting the Possession With Intent to Distribute 50 Grams or More of

---

[1] Because Movant is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two). (Id.) Attorney Gary Collias was appointed to represent Movant. (Id., Document No. 41.) On December 19, 2018, Movant pled guilty without a plea agreement to Counts One and Two of the Superseding Indictment. (Id., Document Nos. 60 – 62.) A Presentence Investigation Report was prepared. (Id., Document No. 84.) The District Court determined that Movant had a Base Offense Level of 32, and a Total Offense Level of 34, the Court having applied the following: (1) A five-level enhancement pursuant to U.S.S.G. § 4B1.1 because Movant met the criteria for career offender status;[2] and (2) A three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b).[3] (Id., Document Nos. 81, 83, and 84.) The District Court sentenced Movant on April 3, 2019, to serve a total term of 168 months imprisonment, to be followed by a five-year term of supervised release. (Id., Document Nos. 80 and 81.) The District Court also imposed a $200 special assessment. (Id.)

On May 8, 2020, Movant filed a "Motion for Modification of Imposed Term of Imprisonment Under § 3582(c)(1)(A)" requesting that the Court reduce his sentence to time served and impose a term of supervised release with a condition of home confinement. (Id., Document No. 132.) In support, Movant relied upon the COVID-19 pandemic and his pre-existing medical conditions. (Id.) By Memorandum Opinion and Order entered on May 29, 2020, the District Court

---

[2] The record reveals that Movant's career offender enhancement was based upon his prior convictions for the following offenses: (1) Arson Third Degree in Kanawha County Circuit Court, Charleston, West Virginia, on July 11, 2007; and (2) Possession with Intent to Distribute in Kanawha County Circuit Court, Charleston, West Virginia, on October 9, 2015. (Criminal Action No. 2:18-cr-00129, Document No. 84, p. 13.)

[3] The District Court varied downward substantially from the lowest end of the Movant's advisory Guideline range. (Criminal Action No. 2:18-00129, Document Nos. 81 and 83.) Movant advisory Guideline range was 262 to 327 months of imprisonment. (*Id.*)

denied Movant's Motion. (Id., Document No. 135.)

On September 8, 2020, Movant filed his "Motion for Reconsideration of Motion for a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)." (Id., Document No. 139.) By Memorandum Opinion and Order entered on November 9, 2020, the District Court denied Movant's Motion. (Id., Document No. 145.)

On January 6, 2021, Movant filed a letter-form Motion for Modification of Imposed Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. (Id., Document No. 150.) On January 28, 2021, Movant filed his Renewed letter-form Motion for Compassionate Release. (Id., Document No. 151.) By Memorandum Opinion and Order entered on March 1, 2021, the District Court denied the above letter-form Motions. (Id., Document No. 152.)

**2.   Section 2255 Motion:**

On April 24, 2020, Movant, acting *pro se*, filed his "Motion to Vacate, Set Aside, or Correct Sentence Pursuant to § 2255." (Civil Action No. 2:20-00301, Document No. 130.) In his Motion, Movant explained that he was "submitting this bare-bone motion as a 'place-holder' to preserve the issues he will more fully develop in the forthcoming Memorandum, which [Movant] expects to have filed within 30 days." (Id.) Movant explained that due to COVID-19 and limited access to the law library, he had "been unable to timely finish a Memorandum fully articulating Movant's arguments of law." (Id.) Movant, however, stated that he had "secured the assistance of a new writ-writer" and he expected to have his Memorandum filed within 30-days. (Id.) As his grounds for *habeas* relief, Movant asserted the following: (1) "[Movant] submits that his Fifth and Sixth Amendment rights were violated at sentencing and on appeal due to the ineffective assistance of counsel;" and (2) "[Movant] further submits that he is not a career-offender, nor was Ice the correct

guideline determining drug." (Id.)

Despite Movant's indication that he would be filing his Memorandum in Support within 30 days, Movant failed to do so. Pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings, the undersigned attempted to conduct a preliminary review of Movant's Section 2255 Motion and found it to be so lacking in essential information that the review could not be completed. Rule 2 of the Rules Governing Section 2255 Proceedings provides that a Section 2255 Motion must (1) "specify all the grounds for relief," (2) "state the facts supporting each ground," and (3) "state the relief requested." Although Movant's Section 2255 Motion stated his grounds for relief, Movant completely failed to "state the facts supporting each ground" and "state the relief requested." By Order entered on February 3, 2022, the undersigned directed Movant file on or before March 3, 2022, an Amended Section 2255 Motion specifically setting forth the facts supporting each ground for relief and state the relief requested. (Id., Document No. 155.)

On March 7, 2022, Movant filed his Amended Section 2255 Motion. (Id., Document No. 156.) As grounds for *habeas* relief, Movant alleges the following: (1) "Inchoate crimes are not eligible for career offender enhancement under 4B1.2(b);" (2) "The disproportionate sentencing for "Pure Ice" and "Meth Mixture;" and (3) "Relevant conduct; the conversion of money to methamphetamine." (Id.) As relief, Movant requests that he be resentence "under the meth mixture, and not as a career offender." (Id.) By Order entered on March 8, 2022, the undersigned directed the United States to file its Answer. (Id., Document No. 157.) Following the granting of an extension of time, the United States filed its Response in Opposition to Movant's Section 2255 Motions. (Id., Document No. 172.) As Exhibits, the United States attached a copy of transcripts from Movant's Plea Hearing and Sentencing Hearing. (Id., Document Nos. 172-1 and 172-2.) On August 15, 2022, Movant filed his Reply. (Id., Document No. 174.) On November 2, 2022, Movant

filed his "Motion to Amend and/or Add to Prior Response Due to the Discovery of New Evidence." (Id., Document No. 178.) By separate Order entered this day, the undersigned has granted Movant's "Motion to Amend and/or Add to Prior Response Due to the Discovery of New Evidence" and construed such as his Supplemental Reply. (Id.)

## DISCUSSION

The relevant portion of Section 2255 provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion made pursuant to Section 2255 is a collateral attack on a conviction or sentence. To succeed on a Section 2255 motion, the movant must prove that "his sentence or conviction was imposed in violation of the Constitution or law of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28 U.S.C. § 2255. "A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States, 2006 WL 36859, * 2 (E.D.Va. Jan. 4, 2006).

Indigent criminal defendants have the constitutional right to effective assistance of counsel through direct appeal. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674

(1984). In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. Id. The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . ... [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1)

that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. Strickland, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; Fitzgerald v. Thompson, 943 F.2d. 463 (4th Cir. 1991), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992).

### 1. Challenge to Career Offender Enhancement and Disproportionate Sentencing for "Pure Ice":

In his Amended Section 2255 Motion, Movant challenges his Sentencing Guideline calculation based upon his career offender enhancement and disproportionate sentencing for "pure ice." (Civil action No. 2:20-00301, Document No. 156.) First, Movant argues this his "inchoate crimes are not eligible for career offender enhancement under 4B1.2(b)." (Id., p. 4.) Movant asserts that "[a]iding and abetting my current offense as well as possession with intent do not meet the criteria for the career offender enhancement." (Id.) Movant explains that "[t]he text of U.S.S.G. 4B1.2(b) and that of the commentary are plainly inconsistent." (Id.) Movant claims that a finding that the "commentary can add to the Guidelines would allow complete circumvention of the checks Congress put on the Sentencing Commission, a body that exercises considerable authority in setting rules that can deprive a citizen of their liberty." (Id.) Second, Movant argues that there is "disproportionate sentencing for 'pure ice' and 'meth mixture.'" (Id., p. 5.) Movant claims that "the distinction between the two no longer represents a meaningful distinction in the actual culpability." (Id.) Movant, therefore, argues that "it seems unjust and extreme that one be calculated at ten times the other." (Id.) As relief, Movant requests that he be resentenced "under the meth mixture and not as a career offender." (Id., p. 12.)

In Response, the United States argues that Movant's above challenges to his Sentencing Guideline calculation should be dismissed. (Id., Document No. 172.) The United States asserts that "[t]he Court varied downward negating any effects from the career offender enhancement or any drug purity disparities." (Id., pp. 3 – 5.) Concerning Movant's career offender enhancement, the United States acknowledges that "the holding in *Campbell* appears to exclude [Movant's] prior West Virginia controlled substance offense as a predicate offense for the career offender enhancement." (Id., p. 4.) The United States, however, claims that "the Fourth Circuit's decision in *Foote* forecloses relief under Section 2255 on any advisory guideline errors that do not raise the [Movant's] sentence above the statutory maximum because they do not constitute a fundamental defect that results in a miscarriage of justice." (Id., pp. 4 – 5.) Furthermore, the United States contends that "because the Court varied downward from the career offender enhanced advisory guideline level, [Movant] cannot establish that his sentence was prejudicially influenced by the enhancement." (Id., p. 5.) The United States explains that without the career offender enhancement, Movant's Guideline range would have been 140 to 175 months imprisonment and the Court varied downward sentencing Movant to 168 months imprisonment. (Id., p. 4.) Concerning Movant's sentencing disparity between "pure ice" and "methamphetamine mixtures" argument, the United States again argues that Movant "discounts the fact that the Court varied downward substantially in sentencing him, in part based upon such disparities." (Id., p. 5.) The United States concludes that Movant cannot demonstrate a fundamental defect or miscarriage of justice stemming from his sentence. (Id.) Accordingly, the United States asserts that Movant is not entitled to any relief under Section 2255 on these bases. (Id.)

In Reply, Movant first argues that a downward departure would have been unnecessary

"without the use of an enhancement that did not apply" to him. (Id., Document No. 174.) Movant contends that he did not receive a "fair sentence" because he was facing "excessive guidelines stemming from an enhancement that [he] did not qualify for without the career enhancement." (Id., p. 3.) Movant alleges that him "being a career offender was mentioned on so many occasions that it would be hard for any judge to not allow it to play a major role in their decision." (Id.) Second, Movant disagrees that "the pure ice enhancement did not play a role in [his] sentencing." (Id.) Movant argues that "[p]ure ice is calculated at ten times the amount of meth mixture" and "[w]ithout the pure ice, [Movant] would have faced no mandatory minimum." (Id.) Movant claims that "[a] sentence is deemed 'fair' when it is given to each and every party, no matter your location, age, race, religion or beliefs equally and with pure ice that is not the case." (Id.)

In his Supplemental Reply, Movant argues that Attorney Collias was ineffective in failing to challenge his Guideline range based upon his career offender status and the disparity between sentence for quantities of "pure ice" versus "methamphetamine mixtures." (Id., Document No. 175.)

"[N]on-constitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which inherently results in a complete miscarriage of justice or is inconsistent with the rudimentary demands of fair procedure." United States v. Mikalajunas, 186 F.3d 490, 495–96 (4th Cir. 199)(internal quotation marks and citations omitted). Thus, allegations of sentencing errors such as Guideline miscalculations are not generally cognizable on § 2255 review. Specifically, "if the alleged sentencing error is neither constitutional nor jurisdictional, a district court lacks authority to review it unless it amounts to 'a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Foote, 784 F.3d 931, 932 (4th Cir.

2015); also see Davis v. United States, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)(a sentencing error is not cognizable on § 2255 review unless it is constitutional, jurisdictional, or amounts to a "fundamental defect which inherently results in a complete miscarriage of justice."); United States v. Fallin, 2022 WL 2752527, * 6 (4th Cir. July 14, 2022)(citing Davis, 417 U.S. at 343, 94 S.Ct. 2298)("Even if Fallin is correct that his conspiracy convictions no longer qualify as crimes of violence for purposes of the Career Offender Guideline, to correct this sentencing error, Fallin must establish that his sentencing error amounts to 'a fundament defect which inherently results in a complete miscarriage of justice.'"); United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999)(barring "extraordinary circumstances, ... an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding."); Mikalajunas, 186 F.3d at 495-96("misapplication of the [sentencing] guidelines typically does not constitute a miscarriage of justice."). The Fourth Circuit explained "[a]s we held in United States v. Foote, 784 F.3d 931(4th Cir. 2015), a career-offender enhancement that is later invalidated by case law is not a miscarriage of justice because it "would be remiss to place an erroneous Guidelines classification under an advisory scheme in the same category as violation of statute or constitutional provision." Fallin, 2022 WL 2752527 at * 6. In Foote, the Fourth Circuit considered whether a petitioner's *habeas* challenge to his sentence, which was based on a subsequently nullified career offender designation, was a fundamental defect that inherently results in a miscarriage of justice. Foote, 784 F.3d at 932. The Fourth Circuit explained that it declined to "declare that a fundamental defect or a complete miscarriage of justice has occurred in a situation in which [a petitioner] was (and on remand, would again be) sentenced under an advisory Guidelines scheme requiring individualized analysis of the sentencing factors set forth in 18 U.S.C. § 3553(a)." Id. at 941(emphasis in original). It is well

recognized that alleged errors in a district court's calculation of a petitioner's Guidelines range does not result in a sufficient miscarriage of justice unless the error causes the court to impose a sentence exceeding the statutory maximum. Id. at 939; Pregent, 190 F.3d at 284.

In his Amended Section 2255 Motion, Movant appears to rely upon United States v. Campbell in his challenge to his career offender enhancement. In United States v. Campbell, the Fourth Circuit held that attempted controlled substance offenses are not proper predicates for career offender status. United States v. Campbell, 22 F.4th 438, 440 (4th Cir. 2022). In Campbell, the district court identified one of defendant's "predicate 'controlled substance offense[s]' justifying the [career offender] enhancement [as] a West Virginia conviction for delivery of crack cocaine in violation of a statute that criminalizes attempt offenses, see W. Va. Code §§ 60A-1-101(h), 60A-4-401(a)." Id. at 440-41. The Fourth Circuit determined that the above West Virginia offense was an improper predicate for a career offender enhancement because the statute criminalized attempted offenses. Id. 441-42, 449. The record reveals that Movant's career offender enhancement was based upon his prior convictions for the following offenses: (1) Arson Third Degree in Kanawha County Circuit Court, Charleston, West Virginia, on July 11, 2007; and (2) Possession with Intent to Distribute in Kanawha County Circuit Court, Charleston, West Virginia, on October 9, 2015. (Criminal Action No. 2:18-cr-00129, Document No. 84, p. 13.) The United States concedes that "the holding in *Campbell* appears to exclude [Movant's] prior West Virginia controlled substance offense as a predicate offense for the career offender enhancement." (Id., Document No. 172, p. 4.) Although Movant's prior controlled substance offense was not a proper predicate offense for the career offender enhancement after Campbell, this offense was part of Movant's extensive criminal history and was proper for consideration under the Section 3353(a)

11

factors in determining an appropriate sentence. Additionally, the District Court varied downward resulting in a sentence within the appropriate Guideline range without the career offender enhancement. Even assuming Movant's advisory Guideline range was improperly calculated based upon his classification as a career offender or the sentencing disparity between "pure ice" and "methamphetamine mixtures," Movant cannot establish that this sentencing error amounts to "a fundamental defect which inherently results in a complete miscarriage of justice." The record reveals that Movant was sentenced under the advisory Guidelines and his total sentence (168 months) clearly did not exceed the statutory maximum (40 years for Count One and Life for Count Two). Movant's conclusory claim that Attorney Collias acted ineffectively concerning Movant's career offender enhancement and the sentencing disparity between "pure ice" and "methamphetamine mixtures" is insufficient to satisfy the Strickland standard. The record reveals that Attorney Collias objected to Movant's career offender enhancement. (Criminal Action No. 2:18-cr-00129, Document No. 84, p. 31 and Document No. 77.) Furthermore, Attorney Collias successfully argued for a substantial downward variance based in part on the sentencing disparity between "pure ice" and "methamphetamine mixtures." (Id., Document Nos. 77 and 83.) Thus, Movant cannot demonstrate the requisite prejudice under Strickland stemming from Attorney Collias' failure to challenge the advisory Guideline range. To the extent Movant relies upon the Campbell decision to support his claim that Attorney Collias acted ineffectively in challenging his career offender enhancement, such is insufficient to establish that counsel's performance "fell below an objective standard of reasonableness." Campbell was not decided until January 7, 2022, more than 2 years and nine months after Movant's sentencing. It is well established that "an attorney's failure to anticipate a new rule of law [is] not constitutionally deficient." United States

12

v. McNamara, 74 F.3d 514, 516 (4th Cir. 1996). Thus, the undersigned finds that Movant has failed to establish that Attorney Collias was deficient or that Movant was prejudiced by the alleged deficiency. Accordingly, the undersigned respectfully recommends that Movant's above claims be dismissed.

**2.    Challenge to Conversion of Seized U.S. Currency Into Drug Weight:**

In this Amended Motion, Movant argues that seized currency was improperly converted into drug weight. (Civil Action No. 2:20-cv-00301, Document No. 156, p. 7.) In support, Movant states that "[d]uring this investigation, [he] was never recorded distributing any illegal narcotics." (Id.) Movant, however, acknowledges that "[d]uring the execution of the search warrant, [he] was said to be in possession of two pre-recorded fifty dollar bills but no proof of where they originated from." (Id.) Movant argues that the "money found in [his] possession did not come from illegal activity." (Id.) Movant claims he "provided the MDENT along with the State prosecutor with receipts, check stubs, bank statements, and ledgers, etc. showing that [his] money was obtained legally." (Id.) Movant contends that he has been "an addict for a long time," but he was never a "drug dealer." (Id.) Movant asserts that he was merely "an addict and petty criminal trying to support a bad habit." (Id.)

In Response, the United States argues that Movant's U.S. currency seized during the execution of a search warrant was properly converted to drug weight. (Id., Document No. 172, pp. 5 - 7.) Citing United States v. Hicks, 948 F.2d 877 (4th Cir. 1991), the United States explains that a district court "may consider the drug equivalent of currency seized as relevant conduct when calculating the total drug weight to attribute to a defendant." (Id., p. 6.) The United States explains that "the informant in this case told investigators that they had negotiated with petitioner for a price

13

of $300 of U.S. currency for a quarter ounce of methamphetamine." (Id.) The United States further states that "[d]uring the execution of the search warrant, law enforcement seized a total of 63.96 grams of methamphetamine." (Id.) The United States contends that in addition to the methamphetamine, law enforcement seized $8,203 in U.S. currency from Movant. (Id.) Therefore, the $8,203 in cash was converted at a rate of $300 per quarter ounce, adding an additional 193.91 grams of methamphetamine to Movant's total drug weight total. (Id.) The United States concludes that "[b]ecause these factual determinations are left up to the sentencing judge's discretion and the judge calculated the cash conversion here in accordance with the negotiated rate between [Movant] and the criminal informant, [Movant's] claim has no merit." (Id., p. 7.)

In Reply, Movant first acknowledges that "the base offense level should reflect all acts and omissions committed that were part of the same course of conduct or common scheme or plan." (Id., Document No. 174, pp. 4 – 5.) Movant, however, argues that "[t]he money recovered during the execution of the search warrant was located in three locations, the larger portion on [his] person." (Id., p. 4.) Movant argues that $200 was located in an envelope in the spare bedroom and this is where the two pre-recorded bills were located. (Id.) Movant argues that all money taken from his person was "accounted for just a few months prior to this warrant [because he] had been released from Charleston Work Release and given a check for several thousand dollars." (Id.) Movant claims that he "had been working full time at two different locations along with doing odd jobs." (Id.) Movant asserts that the money he "saved working [was] invested at a local public auction in vehicles that [he] fixed and sold." (Id.) Movant alleges that his "mother had just given [him] $6,000 to purchase a 2008 Lincoln Mark LT truck that had a Bluebook value of $14,000." (Id.) Movant contends that "all of this is verified by check stubs [and] a financial ledger from the

14

detail shop [he] was running." (Id., pp. 4 – 5.) Movant argues that he has no criminal history of distribution of narcotics, only possession. (Id., p. 5.) Movant contends that the "conversion of the currency was not accurate because the money had nothing to do with the drugs." (Id.) Movant claims that the "audio video purchase by the CI was a mistake a long time friend trying to help another friend that turned out to be a lover scorned seeking revenge for a broken heart." (Id.)

In his Supplemental Reply, Movant contends that Attorney Collias was "ineffective by not raising the issue of the relevant conduct being counted as 'pure ice' and not 'meth mixture.'" (Id., Document No. 175, p. 2.) Movant argues that "[b]y converting the money to 'pure ice' it increased [Movant's] base offense level." (Id.) Movant asserts that "[a]fter the three point reduction for acceptance, the base offense level would then be 27 with a guideline range of 120 – 150 months making the 168 month sentence imposed an above guideline range sentence." (Id., p. 3.)

In the instant case, Movant challenges his sentence by arguing that the District Court abused its discretion by calculating the attributable drug weight by converting U.S. currency found in his possession. Relevant conduct requires that in drug cases, the offense level reflects "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.2(a)(2). Movant acknowledges that he does not dispute the foregoing. Movant, however, appears to argue that the District Court erred in finding that the seized U.S. currency was relevant conduct because such currency was obtained by legal means. During the Sentencing Hearing, the District Court found, in pertinent part, as follows:

> On April the 4th of 2017 co-defendant Mary Haynes sold 6.96 grams of methamphetamine to a confidential informant for $300. She commented that she needed the money to pay, quote, him, end of quote, back which the CI interpreted to mean her boyfriend, Mr. Haddox.
> Officers executed a search of Mr. Haddox's residence on April the 7th, 2017, and seized approximately 63.96 grams of ice. They also seized a total of $8,203 in

> United States currency, some of which was in Mr. Haddox's pocket.
> The currency included pre-recorded controlled buy money, and the currency is converted to drugs at a rate of $1,200 per ounce based on the price involved in the controlled sale. The total drug weight attributable to Mr. Haddox is 264.83 grams of ice.

(Civil Action No. 2:20-cv-00301, Document No. 172-2, p. 31.) For Guideline purposes, the District Court may make a finding of the drug quantity by a preponderance of the evidence as long as the quantity results in a sentence within the statutory maximum. See United States v. McAllister, 272 F.3d 228, 232 (4th Cir. 2001). In his Amended Section 2255 Motion, Movant argues that the $8,203 seized during the execution of the search warrant was obtain by legal means and should not have been converted into drug weight. Although Movant alleges that he has check stubs and financial ledgers to "prove" the seized currency was obtained by legal means, Movant did not produce such evidence or assert such a defense during his underlying criminal proceedings. Additionally, Movant fails to produce any such evidence in the instant case. Movant further acknowledges that pre-recorded controlled-buy money was seized during the execution of the search warrant. Movant, however, alleges that such pre-recorded controlled-buy money was found in an envelope in the bedroom. The underlying record, however, refutes this claim. The underlying record reveals that the prerecorded controlled-buy money was found in the money located in Movant's pocket ($7,600), which refutes Movant current claim that the money found in his pocket had just been given to him by his mother to purchase a vehicle. (Criminal Action No. 2:18-00129, Document No. 84, pp. 8 – 9.) Accordingly, there is no indication that the District Court erred in finding by a preponderance of the evidence that the total drug weight attributable to Movant was 264.83 grams of ice. Furthermore, Movant's conclusory claim that Attorney Collias was ineffective in failing to challenge the conversion of the U.S. currency into drug weight is

insufficient to meet either of the Strickland prongs to demonstrate ineffective assistance of counsel. Movant completely fails to specify what Attorney Collias should have done differently or how such would have made a favorable difference. During both his Plea Hearing and Sentencing Hearing, Movant acknowledged under oath that he was "fully satisfied" with Attorney Collias' representation. (Civil Action No. 2:20-00301, Document No. 172-1, p. 5 and Document No. 172-2, p. 12.) Thus, the undersigned finds that Movant has failed to establish that Attorney Collias was deficient or that he was prejudiced by the alleged deficiency. Even assuming the District Court miscalculated Movant's Guideline range based upon the above relevant conduct, such did not result in a sentence exceeding the statutory maximum. Based upon the foregoing, the undersigned respectfully recommends that the above claim be denied.

## **PROPOSAL AND RECOMMENDATION**

Accordingly, the undersigned respectfully proposes that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and Amended Motion (Document Nos. 130 and 156) and **REMOVE** this matter from the Court's docket.

Movant is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing

of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Movant, who is acting *pro se*, and counsel of record.

Date: April 4, 2023.



Omar J. Aboulhosn
United States Magistrate Judge